**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**IN RE HENRY SCHEIN, INC.**
**SECURITIES LITIGATION**

**Master File No. 1:18-cv-01428-MKB-VMS**

**CLASS ACTION**

---

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR**
**FINAL APPROVAL OF CLASS-ACTION SETTLEMENT**

Ralph C. Ferrara (*pro hac vice*)
Ann M. Ashton (*pro hac vice*)
Proskauer Rose LLP
1001 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, D.C.  20004
T:  (202) 416-6800
F:  (202) 416-6899
rferrara@proskauer.com
aashton@proskauer.com

Jonathan E. Richman
Peter D. Doyle
Proskauer Rose LLP
11 Times Square
New York, New York  10036
T:  (212) 969-3000
F:  (212) 969-2900
jerichman@proskauer.com
pdoyle@proskauer.com

*Attorneys for Defendants*

August 12, 2020

**TABLE OF CONTENTS**

*Page*

**INTRODUCTION**................................................................................................1

**BACKGROUND AND PROCEDURAL HISTORY** ................................................2

    A.    The Proposed Settlement ......................................................2
    B.    Confirmatory Discovery ......................................................4

**ARGUMENT** ....................................................................................................4

    I.    THE COURT HAS JURISDICTION TO APPROVE THE SETTLEMENT.........5

    II.    THE CLASS NOTICE MET ALL APPLICABLE REQUIREMENTS. ...............5

    A.    Best Practicable Notice Methodology ....................................7
    B.    Sufficient Content of the Notice ..........................................8

    III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE...................................................................10

    A.    Procedural Fairness.........................................................11
    B.    Substantive Fairness........................................................14

        1.    Risks of Establishing Liability and Damages ...........................15
        2.    Effectiveness of Method of Distributing Settlement Relief................16
        3.    Award of Attorneys' Fees................................................17
        4.    Agreements Between the Parties ..........................................17
        5.    Equitable Treatment of Class Members....................................17
        6.    Class's Reaction to Settlement............................................18
        7.    Stage of Proceedings and Amount of Discovery Completed...................18
        8.    Defendant's Ability to Withstand a Greater Judgment............................19
        9.    Range of Reasonableness of Settlement Fund ...........................20

**CONCLUSION** ................................................................................................22

i

# TABLE OF AUTHORITIES

*Page(s)*

CASES:

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by*
    *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)..............10, 11, 14, 15, 18, 20

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014),
    *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015)...................................12

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001).................................................................................11, 12, 13, 19

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .........................................................................21

*Hicks v. Morgan Stanley*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................................................13

*In re Amer. Bus. Fin. Servs. Inc. Noteholders Litig.*,
    2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ........................................................................21

*In re Auction Houses Antitrust Litig.*,
    2001 WL 170792 (S.D.N.Y. Feb. 22, 2001),
    *aff'd*, 42 F. App'x 511 (2d Cir. 2002).............................................................................10, 12

*In re Bisys Sec. Litig.*,
    2007 WL 2049726 (S.D.N.Y. July 16, 2007) ........................................................................21

*In re China Med. Corp. Sec. Litig.*,
    2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ........................................................................13

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013).........................................................................18, 20, 21

*In re Credit Default Swaps Antitrust Litig.*,
    2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016).........................................................................13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).........................................................................13

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ..........................................................................................21

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................6, 8, 14, 18, 19

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) .....................................................................21

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) .....................................................................6

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
   2017 WL 2559230 (S.D.N.Y. May 22, 2017) ...................................................13

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)......................................................21

*In re NFL Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016)...........................................................................8

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y.),
   *aff'd*, 117 F.3d 721 (2d Cir. 1997)............................................................19, 21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ("*In re Payment Card I*")...........................6, 10, 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*,
   2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019)
   ("*In re Payment Card II*")...............................................8, 10, 11, 18, 20

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   148 F.3d 283 (3d Cir. 1998).............................................................................5

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ..............................................................21

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)..............................................................13

*In re ViroPharma Inc. Sec. Litig.*,
   2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ......................................................21

*Jackson v. Abernathy*,
   960 F.3d 94 (2d Cir. 2020).................................................................15, 16, 20

*Silvercreek Management, Inc. v. Citigroup, Inc.*,
   248 F. Supp. 3d 428 (S.D.N.Y. 2017)..............................................................16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)......................................................................6, 10, 11, 12

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1983)..........................................................................20

*Yang v. Focus Media Holding Ltd.*,
    2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)..........................................13

**STATUTES:**

15 U.S.C. § 78u-4 ................................................................................................7

28 U.S.C. § 1331 ................................................................................................5

28 U.S.C. §§ 1715 *et seq.*...................................................................................8

15 U.S.C. § 78aa(a)............................................................................................5

**OTHER AUTHORITIES:**

Fed. R. Civ. P. 23 ................................................................................. *passim*

Fed. R. Civ. P. 23, 2018 Amendment Advisory Comm. Note to Subdiv. (e)(2)....................11, 14

## INTRODUCTION

This case is a putative securities class action brought on behalf of purchasers of common stock issued by Henry Schein, Inc. ("Schein"), a large distributor of dental supplies and equipment.  The suit alleges that Schein engaged in "collusive and anticompetitive practices" with its primary competitors in the North American dental distribution market "to maintain Schein's margins, profits, and market share," but defrauded investors by "misleadingly attribut[ing] the strength of [its] dental distribution business to the quality of [its] value-added business model."  [Consolidated Complaint ("Complaint" or "Compl.") ¶ 3]  Schein's stock price allegedly fell "[w]hen the market learned the truth – that Schein's purported profit margins and market share were unsustainable and had been inflated by collusive conduct" [*id.*].  The Complaint asserts claims under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934.

Defendants moved to dismiss the case, and the Court partially granted the motion. Several weeks later, Schein won a complete victory after a lengthy trial before a Federal Trade Commission ("FTC") Administrative Law Judge ("ALJ"), who concluded that Schein had not engaged in the primary anticompetitive conduct underlying the claims in this securities action.

Shortly thereafter, Defendants and Lead Plaintiff ("Plaintiff") began settlement discussions and reached an agreement in principle to settle the case after a two-day mediation under the auspices of two experienced mediators, retired California Superior Court Judge Daniel Weinstein and Jed D. Melnick, Esq.  The parties later entered into a Settlement Agreement,[1] which this Court preliminarily approved on May 5, 2020.  Notice has been sent and published to putative Class Members, who have had an opportunity to object to or opt out of the proposed settlement.  Defendants now support Plaintiff's motion for final approval of the settlement.

---

[1]　　All capitalized terms not defined in this Memorandum have the meanings given to them in the Settlement Agreement.

The parties agree that the proposed settlement represents a fair and reasonable compromise of the action.  As Defendants explained in their brief in support of preliminary approval (as supplemented below), Plaintiff would face enormous – and probably insurmountable – obstacles if it were to proceed with this case.  Schein's victory in the FTC trial destroys Plaintiff's allegations that Schein made false or misleading statements about the competitive nature of the dental distribution market and otherwise engaged in anticompetitive misconduct.  Moreover, Defendants' fully briefed motion for reconsideration of a dispositive issue concerning corporate scienter was pending in this action when the parties agreed to the proposed settlement, and a subsequent decision by the Second Circuit shows that Defendants likely would have prevailed on that motion, thereby requiring dismissal of the rest of the case.

Furthermore, the proposed settlement would provide immediate cash benefits to the Class and enable Defendants to resolve a distracting lawsuit.  According to Plaintiff's calculations, the settlement represents an above-average recovery when measured against Plaintiff's estimate of the Class's likely provable damages.  The Class Members' support of the proposed settlement further underscores the fairness, reasonableness, and adequacy of the compromise.

## BACKGROUND AND PROCEDURAL HISTORY

Defendants' brief in support of preliminary approval [Dkt. No. 73] provided background on Schein's dental distribution business, the antitrust allegations asserted against Schein, the filing of this securities class action, the Court's ruling on Defendants' motion to dismiss, the FTC ALJ's decisive ruling in Schein's favor after a lengthy trial on the merits, and the parties' entry into the proposed settlement of this action.  Defendants will not repeat those matters here.

### A.    **The Proposed Settlement**

The parties' counsel executed the Stipulation of Settlement as of April 30, 2020 (the "Stipulation" or "Stip.").  [Dkt. No. 70-1]  That agreement, which is subject to the Court's

approval, provides for a cash payment of $35,000,000 (the "Settlement Amount") to resolve all claims in the action.  [*Id.* § I.A.62 at 20]  As Plaintiff's submission shows, the Settlement Amount has been paid into an escrow account in accordance with the terms of the Stipulation. [*Id.* §§ III.A.1, III.B.1, at 23-24]

The Stipulation states that notice and administrative costs, as well as Lead Counsel's fees and expenses, will be paid from the settlement fund.  [Stip. §§ III.A.4, X, at 24, 41-43]  The remainder of the fund will be distributed to eligible Class Members.  Any undistributable funds will be allocated pursuant to a Court-approved *cy près* arrangement; they will not revert to Schein.  [*Id.* §§ III.B.7, III.D.7, at 25, 28]

On April 30, 2020, Plaintiff filed a motion asking the Court to preliminarily approve the proposed settlement, certify the Class for settlement purposes, and authorize dissemination of notice to the potential Class Members.  [Dkt. Nos. 70-71]  On May 1, 2020, Defendants filed their brief in support of Plaintiff's motion.  [Dkt. No. 73]  The Court issued its Preliminary Approval Order on May 5, 2020.  [Dkt. No. 74]  That Order preliminarily approved the proposed settlement, certified the putative Class for settlement purposes, approved the form and content of the proposed notice materials, authorized the mailing and publication of the notice materials, and scheduled a Fairness Hearing for September 16, 2020.

Defendants understand that, starting on May 29, 2020, the Claims Administrator (A.B. Data, Ltd.) mailed copies of the Court-approved Individual Notice and Claim Form (the "Notice Packet") to all potential Class Members identified by Schein, to 4,161 Nominees representing potential Class Members, and to 81,769 potential Class Members whose names the Claims Administrator received from individuals or Nominees.  [Decl. of Eric J. Miller (the "Miller Decl."), ¶¶ 3-7]  Defendants also understand that Nominees mailed Notice Packets to

93,489 potential Class Members.  [*Id.* ¶ 7]  Thus, 179,750 Notice Packets in total were mailed to potential Class Members and Nominees.  [*Id.* ¶ 8]

A.B. Data caused the Court-approved Summary Notice to be published once in each of *The Wall Street Journal* and *Investor's Business Daily*, as well as on PR Newswire.  [*Id.* ¶ 9]  A.B. Data also posted information and documents about the settlement on a dedicated website that it created for the settlement.  [*Id.* ¶ 11]

### B.     Due-Diligence Discovery

The proposed settlement was conditioned on Plaintiff's ability to conduct additional discovery to determine whether the underlying facts were consistent with Plaintiff's original understanding that the settlement is fair, reasonable, and adequate.  [Stip. § II at 22-23]  As Plaintiff's submission explains, Schein made available to Lead Counsel more than 200,000 documents, and Plaintiff's counsel interviewed two senior Schein officials.  After reviewing all of this discovery, Plaintiff and Lead Counsel decided to proceed with the proposed settlement.

## ARGUMENT

The Court should approve the proposed settlement as fair, reasonable, and adequate. Lead Counsel and Defendants' counsel engaged in extensive, arm's-length settlement negotiations with the assistance of respected, experienced mediators.  The parties' counsel are skilled in securities class-action litigation and were involved in each step of the negotiations. The settlement would provide the Class with immediate financial benefits that are well within the range of settlements in similar types of actions.  Only one Class Member has objected to the settlement at this time (only as to Plaintiff's attorneys' fees), and only two potential Class Members have opted out of it.  Accordingly, the Court should grant final approval of the proposed settlement and dismiss the action pursuant to the proposed final Judgment.

I.      **THE COURT HAS JURISDICTION TO APPROVE THE SETTLEMENT.**

The Court has the requisite subject-matter and personal jurisdiction to approve the

proposed settlement.

The Complaint alleges that Schein violated provisions of the Exchange Act.  The Court

therefore has subject-matter jurisdiction under § 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a),

as well as under the general federal-question statute, 28 U.S.C. § 1331.

The Court has personal jurisdiction over Plaintiff and all other Class Members.  "In the

class action context, the district court obtains personal jurisdiction over the absentee class

members by providing proper notice of the impending class action and providing the absentees

with the opportunity to be heard or the opportunity to exclude themselves from the class."  *In re*

*Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998).  As discussed

below, and as the Preliminary Approval Order concluded, those conditions were satisfied here.

II.     **THE CLASS NOTICE MET ALL APPLICABLE REQUIREMENTS.**

The Preliminary Approval Order ruled that the class-notice materials and the proposed

method of dissemination (by first-class mail and publication) met the requirements of Rule 23 of

the Federal Rules of Civil Procedure, due process, and the Private Securities Litigation Reform

Act of 1995 (the "PSLRA"), "constitute[d] the best notice practicable under the circumstances,

and constitute[d] due and sufficient notice to all persons entitled to such notice."  [Prelim.

Approval Order ¶ 10 (Dkt. No. 74)]  Now that notice has been provided to the Class, the Court

can and should reaffirm its earlier findings concerning the adequacy of the Notice Program

(including the Notice Packet, as well as the manner of delivering and publishing those notices).

"Where, as here, the parties [have sought] simultaneously to certify a settlement class and

to settle a class action, the elements of Rule 23(c) notice . . . are combined with the elements of

Rule 23(e) notice . . . because Rule 23(e)'s notice requirements are less specific than that of

Rule 23(c)'s . . . ." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 185 (S.D.N.Y. 2012) (internal quotations omitted).

For classes certified under Fed. R. Civ. P. 23(b)(3), such as the Class in this action, Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances," including "individual notice to all members who can be identified through reasonable effort." The Rule also requires the notice to state "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(i-vii).

Rule 23(e)(1)(B) is less specific, requiring only that notice of a settlement be given "in a reasonable manner." Thus, if the notice satisfies Rule 23(c), it will also satisfy Rule 23(e). *E.g.*, *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 448 (S.D.N.Y. 2004).

Similarly, under the Constitution's Due Process Clause, the adequacy of settlement notice is determined by its reasonableness. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 58 (E.D.N.Y. 2019) ("*In re Payment Card I*") (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113-14 (2d Cir. 2005) ("*Wal-Mart Stores*")). Accordingly, "[c]ourts in this Circuit have explained that a Rule 23 Notice will satisfy due process when it describes the terms of the settlement generally, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." *Id.* (citations and internal quotations omitted).

The Exchange Act, in provisions added by the PSLRA, imposes certain notice requirements specifically for settlements of securities class actions.  15 U.S.C. § 78u-4.  The PSLRA requires that the notice contain the following information:

- Statement of recovery – "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis";

- Statement of potential outcome of case – the amount of damages per share recoverable if the plaintiffs were to prevail on every claim, but, if the parties are unable to agree on damages, "a statement from each settling party concerning the issue or issues on which the parties disagree";

- Statement of attorneys' fees – a statement of fees and costs to be applied for in the aggregate and on an average per-share basis;

- Identification of lawyers' representatives – the name, telephone number, and address of counsel available to answer questions; and

- Reasons for settlement – "[a] brief statement explaining the reasons why the parties are proposing the settlement."

*Id.*  The notice must also include a cover page summarizing all of those topics.  *Id.*

### A.    <u>Best Practicable Notice Methodology</u>

The means by which notice was provided to potential Class Members met all applicable requirements for adequacy of notice and due process.  The Notice Packet was sent by first-class mail to all potential Class Members who could be identified through reasonable efforts – meaning all potential Class Members for whom names and addresses were available.  [Stip. § IV.A.1, at 32; Miller Decl., ¶¶ 2-8]

The Claims Administrator also posted the Notice Packet (as well as other documents relating to the lawsuit and the settlement) on a website that it established for the settlement. [Stip. §§ IV.A.2, V.B, at 32, 34; Miller Decl., ¶ 11]  The website and the notice materials provided telephone numbers (including a toll-free number) that potential Class Members could call if they had questions.  [Stip. § V.B, at 34; Miller Decl., ¶ 10]

In addition, the Claims Administrator arranged for publication of the Court-approved Summary Notice in *The Wall Street Journal* and *Investor's Business Daily* as well as on PR Newswire.  [Stip. § IV.B.1, at 32; Miller Decl., ₱ 9]  The Summary Notice contained pertinent information about the class action and settlement required by Rules 23(c)(2) and 23(e) and by principles of due process.

These procedures fully satisfied Rule 23(c)(2)'s requirement of individual notice "to all members who can be identified through reasonable effort."  *See, e.g.*, *In re Global Crossing*, 225 F.R.D. at 449 (notice by first-class mail, publication of summary notice, posting on website, and toll-free number collectively satisfied Rule 23(c)(2)'s requirements) (internal quotations omitted).[2]

### B.     Sufficient Content of the Notice

The potential Class Members will have received the "best notice that is practicable under the circumstances," as required by Rule 23(c)(2), if the notice "contain[s] sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class."  *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 435 (3d Cir. 2016) (internal quotations omitted); *accord, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig,* 2019 WL 6875472, at *34 (E.D.N.Y. Dec. 16, 2019) ("*In re Payment Card II*") (Notice must "fairly apprise" recipients of proposed settlement terms "and of the options that are open to them in connection with the proceeding.  In addition, notice is adequate if it may be understood by the average class member.") (citations and internal quotations omitted).  The Notice Packet provided

---

[2]     Additionally, in accordance with the Class Action Fairness Act, 28 U.S.C. §§ 1715 *et seq.* ("CAFA"), within ten days after the Settlement Agreement was filed with the Court, the Claims Administrator (at Defendants' instruction) sent CAFA-compliant notice to United States federal and state officials.  [Stip. § IV.C.1, at 33; Miller Decl., ₱ 13]

an organized and easily readable discussion of the requisite information, thus meeting the applicable standards.

The Notice Packet informed potential Class Members of the relevant aspects of the claims in the Complaint and the terms of the proposed settlement, including:

- The nature of the case, a statement of the claims and defenses, and an explanation of how the settlement fund will be allocated among eligible Class Members if the proposed settlement is approved;

- The right of potential Class Members to exclude themselves from the Class, to object to any aspect of the proposed settlement, or to appear at the Fairness Hearing – and the processes and deadlines for doing so;

- The date of the Fairness Hearing;

- The terms of the release of claims; and

- The binding effect of any judgment – whether favorable or not – on all persons who do not exclude themselves from the Class, and the impact on Class Members if the proposed settlement is approved.

The content of the notice thus complied with Rule 23(c)(2).

In addition, consistent with the PSLRA's requirements, the Individual Notice:

- Presented the settlement amount on an aggregate and a per-share basis, and also provided the proposed plan of distribution;

- Informed potential Class Members of the parties' disagreement regarding damages and explained each party's position on that issue;

- Stated the amount of attorneys' fees and expenses sought on an aggregate and a per-share basis;

- Provided potential Class Members with the name, address, and telephone number of Lead Counsel; and

- Explained why the parties proposed the settlement.

The Individual Notice thus met the PSLRA's requirements.

Accordingly, the notice procedures and the contents of the Individual Notice and the Summary Notice satisfied all applicable requirements, including those of Rules 23(c)(2) and

23(e), the PSLRA, and the U.S. Constitution.  The Court should therefore reaffirm the finding in

its Preliminary Approval Order that the notices and notice methodology were the best practicable

under the circumstances and met all applicable requirements.  The Court should also confirm that

the Notice Program was implemented as required by the Preliminary Approval Order.

## III.       THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

"Under Rule 23(e), a court may grant final approval of a proposed settlement 'only after a

hearing and only on finding that it is *fair, reasonable, and adequate* after considering'

the Rule 23(e)(2) factors."  *In re Payment Card II*, 2019 WL 6875472, at *13 (quoting Fed. R.

Civ. P. 23(e)(2)).  This standard "includes both procedural and substantive components."  *In re*

*Auction Houses Antitrust Litig.*, 2001 WL 170792, at *5 (S.D.N.Y. Feb. 22, 2001), *aff'd*,

42 F. App'x 511 (2d Cir. 2002).  Courts examine procedural and substantive fairness in light of

the "'strong judicial policy in favor of settlements, particularly in the class action context.'"  *In*

*re Payment Card I*, 330 F.R.D. at 27 (quoting *Wal-Mart Stores*, 396 F.3d at 116-17).

"Assessing procedural fairness requires attention to such matters as the negotiation

history and adequacy of class representation.  Factors pertinent to substantive fairness are

included among those set out in" the Second Circuit's decision in *City of Detroit v. Grinnell*

*Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated*

*Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  *In re Auction Houses*, 2001 WL 170792, at *5; *accord*,

*e.g.*, *In re Payment Card II*, 2019 WL 6875472, at *13 (noting that *Grinnell* factors "assist in

weighing final approval and determining whether a settlement is substantively 'fair, reasonable,

and adequate'").

Fed. R. Civ. P. 23(e)(2) now codifies the factors that a court should consider when called

upon to approve a proposed settlement:  (A) whether the class representative and class counsel

adequately represented the class; (B) whether the proposal was negotiated at arm's length;

(C) whether the settlement relief is adequate, taking into account (*i*) "the costs, risks, and delay of trial and appeal," (*ii*) the effectiveness of the proposed method of processing class members' claims and distributing relief, (*iii*) the terms of any proposed award of attorneys' fees, and (*iv*) any other agreements among the settling parties; and (D) whether the proposal "treats class members equitably relative to each other."  However, as the Advisory Committee Notes explain, "[t]he goal of this amendment is not to displace any factor[s]" that courts previously applied under *Grinnell* and similar cases, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23, 2018 Amendment Advisory Comm. Note to Subdiv.(e)(2); *see also In re Payment Card II*, 2019 WL 6875472, at *14 ("There is significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which complement, rather than displace each other.").

Below, Defendants discuss why the Rule 23(e)(2) and *Grinnell* factors favor final approval of the settlement as both procedurally and substantively fair under any standard.

### A.      Procedural Fairness

Rules 23(e)(2)(A) and (B) require the Court to assess the proposed settlement's procedural fairness:  whether Plaintiff and Lead Counsel adequately represented the Class and whether the proposed settlement was negotiated at arm's length.  Courts in this Circuit have traditionally examined those issues in conjunction with the *Grinnell* factors, although the Rule's considerations are not among the enumerated *Grinnell* factors.

To assess procedural fairness, the Court must examine the negotiating process that led to the proposed settlement.  *Wal-Mart Stores*, 396 F.3d at 116; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *In re Payment Card II*, 2019 WL 6875472, at *13.  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-

length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted).

The proposed settlement here was negotiated by experienced, informed counsel.  Lead Counsel is a premier plaintiffs'-side securities firm with experience in litigating securities class actions and with deep understanding of the factual and legal issues presented.  Lead Counsel was assisted by experts and had access to extensive documents before entering into the Stipulation. Neither the parties' agreement in principle nor the final Stipulation addressed the fees that Lead Counsel might seek, so the negotiating process was not affected by fee considerations.  *See, e.g.*, *In re Auction Houses*, 2001 WL 170792, at *6 (finding "no doubt" about procedural fairness where "[t]he settlement was reached among exceptionally able counsel, experienced in litigation of this sort," and "the negotiations that produced this proposed settlement could not have been influenced adversely by considerations of counsel's compensation").

Courts have also recognized that the participation of experienced, respected mediators weighs in favor of a proposed settlement's procedural fairness.  *See, e.g.*, *D'Amato*, 236 F.3d at 85 ("mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").  In this case, the parties reached a settlement with the assistance of the Hon. Daniel Weinstein and Jed D. Melnick, Esq., two JAMS mediators with a wealth of knowledge and experience handling securities class actions and other complex cases.

Many District Judges in this Circuit (and elsewhere) have cited Judge Weinstein as a respected, experienced mediator whose involvement in settlement negotiations has helped to guarantee procedural fairness.  *See, e.g.*, *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014) (approving class-action settlement mediated by Judge Weinstein, "one of the nation's premier mediators in complex, multi-party, high stakes litigation,

and one in whom this court reposes considerable confidence as a result of past experience"),

*aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *In re Telik, Inc. Sec. Litig.*,

576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) ("Judge Weinstein's role in the settlement

negotiations strongly supports a finding that they were conducted at arm's length and without

collusion.").[3]

Courts also have cited Mr. Melnick's involvement in settlement negotiations as evidence

of procedural fairness.  *See, e.g., In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2017

WL 2559230, at *7 (S.D.N.Y. May 22, 2017) ("The Settling Parties then engaged in a mediation

process using a nationally recognized mediator, Jed D. Melnick, Esq."); *Yang v. Focus Media*

*Holding Ltd.*, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) ("Mr. Melnick's role in the

settlement negotiations overcomes any hesitation this court might have about approving a

settlement reached prior to any discovery."); *In re China Med. Corp. Sec. Litig.*, 2014 WL

12581781, at *5 (C.D. Cal. Jan. 7, 2014) ("Mr. Melnick's involvement in the settlement supports

the argument that it is non-collusive.").

Judge Weinstein's and Mr. Melnick's involvement in the mediation thus should give the

Court additional comfort about the proposed settlement's fairness and, in particular, about the

professional, noncollusive nature of the negotiation process.

---

[3]     *See also, e.g., In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *2, *7
(S.D.N.Y. Apr. 26, 2016) (noting that settlement was negotiated with "a renowned mediator,
Daniel Weinstein," and that the parties were "assisted by an able mediator"); *In re Flag Telecom*
*Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010) ("The presumption
in favor of the negotiated settlement in this case is strengthened by the fact that the settlement
was reached in an extended mediation supervised by Judge Weinstein."); *Hicks v. Morgan*
*Stanley*, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) (noting Judge Weinstein's
involvement as mediator, and observing that "[t]he participation of a respected and neutral
mediator gives [the court] confidence that [the negotiations] were conducted in an arms-length,
non-collusive manner") (internal quotations omitted).

### B.   **Substantive Fairness**

Rule 23(e)(2)(C) and (D) "constitute the 'substantive' analysis factors, and examine 'the relief that the settlement is expected to provide to class members . . . .'"   *In re Payment Card I*, 330 F.R.D. at 29 (quoting Fed. R. Civ. P. 23, 2018 Amendment Advisory Comm. Note to Subdiv.(e)(2)).   Paragraph (C) requires a substantive review of the proposed settlement's fairness to determine whether "the relief provided for the class is adequate," taking into account four factors:   (*i*) "the costs, risks, and delay of trial and appeal," (*ii*) the effectiveness of the proposed method of processing class members' claims and distributing relief, (*iii*) the terms of any proposed award of attorneys' fees, and (*iv*) any other agreements among the settling parties. Paragraph (D) examines whether the proposed settlement treats members of the same class equitably.

The *Grinnell* factors, considered in conjunction with Rule 23(e)(2), also focus on the adequacy of the proposed relief, and examine:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell Corp.*, 495 F.2d at 463 (citations omitted).   While the Court "must give comprehensive consideration to all relevant factors . . . , it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case."   *Id.* at 462.   Moreover, "[i]n finding that a settlement is fair, not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances."   *In re Global Crossing*, 225 F.R.D. at 456 (internal quotations omitted).

The Rule 23(e)(2) and *Grinnell* factors as a whole here weigh heavily in favor of approving the proposed settlement.

Defendants respectfully refer the Court to their brief in support of preliminary approval [ECF No. 73 at 11-25] for their discussion of Rule 23(e)(2)(C)(i) – "the costs, risks, and delay of trial and appeal" – and the *Grinnell* factors it encompasses:  (1) the complexity, expense and likely duration of the litigation; (4) the risks of establishing liability; (5) the risks of establishing damages; and (6) the risks of maintaining the class action through the trial.  In this brief, Defendants supplement their prior discussion of the risks of establishing liability and damages, particularly as to Plaintiff's need to prove corporate scienter.  Defendants then address the remaining Rule 23(e)(2)(C) and (D) factors and the remaining *Grinnell* factors.

## 1.    Risks of Establishing Liability and Damages

Defendants' brief in support of preliminary approval explained that the Court had granted large portions of Defendants' motion to dismiss and that Defendants' pending, fully briefed reconsideration motion could have disposed of the remainder of the case.  Subsequent developments show that Defendants would have had a strong chance of prevailing on their reconsideration motion had the parties not agreed to the proposed settlement.

On May 27, 2020 – after the Court preliminarily approved the proposed settlement – the Second Circuit issued a decision on corporate scienter.  The Second Circuit held that, where the individual makers of alleged misstatements did not have the requisite scienter, a securities-fraud plaintiff cannot establish *corporate* scienter without pleading facts showing that other employees, who did not make the challenged statements but who allegedly knew about underlying corporate misconduct that purportedly made those statements false or misleading, had some connection to those statements.  *Jackson v. Abernathy*, 960 F.3d 94 (2d Cir. 2020). Although the plaintiff in *Jackson* had pled that several lower-level employees had known about

operational problems that allegedly had made the company's statements false or misleading, the

Second Circuit affirmed the dismissal of the case because the plaintiff had "provide[d] no

connective tissue between those employees and the alleged misstatements." *Id.* at 99.  In the

absence of factual allegations as to "what role those employees played in crafting or reviewing

the challenged statements," the plaintiff failed to plead a strong inference of corporate scienter.

*Id.*  The Second Circuit based its ruling in part on *Silvercreek Management, Inc. v. Citigroup,*

*Inc.*, 248 F. Supp. 3d 428, 440-41 (S.D.N.Y. 2017).  *Jackson*, 960 F.3d at 99.

The principle propounded in *Jackson* is precisely the one that Defendants had made in

their reconsideration motion, citing the *Silvercreek* case:  even if Plaintiff had sufficiently pled

that a corporate employee (Mr. Sullivan) had known about or participated in the allegedly

anticompetitive conduct underlying Plaintiff's securities-law claims, Plaintiff nevertheless had

failed to plead any facts connecting Mr. Sullivan to the challenged misstatements or omissions.

Mr. Sullivan's alleged scienter thus could not be attributed to Schein itself.  And without that

attribution, Plaintiff's case would have collapsed in its entirety, because the Court had already

dismissed the claims against the individual speakers (Schein's CEO and CFO).  The *Jackson*

decision thus reinforces the weakness of Plaintiff's claims and the fairness of the settlement.

### 2.    Effectiveness of Method of Distributing Settlement Relief

Rule 23(e)(2)(C)(ii) considers "the effectiveness of any proposed method of distributing

relief to the class, including the method of processing class-member claims."  Here, the proposed

settlement provides for the standard distribution mechanism used in virtually all securities class

actions.  The notice materials sent to potential Class Members and posted on the Claims

Administrator's website included a Claim Form, which this Court previously approved.  Class

Members wishing to seek settlement relief must submit Claim Forms to the Claims

Administrator, providing data about their Class Period transactions in Schein common stock.

The Claims Administrator will process those forms and distribute relief to eligible claimants.  If a dispute arises about a claimant's eligibility, the claimant may submit the dispute to the Claims Administrator and Lead Counsel and, if necessary, to the Court.  [Stip. § III.E, at 29-31]  These commonly used procedures satisfy Rule 23(e)(2)(C)(ii).

      **3.**      **<u>Award of Attorneys' Fees</u>**

Rule 23(e)(2)(C)(iii) considers "the terms of any proposed award of attorneys' fees, including timing of payment."  As discussed above, the Stipulation does not provide for any particular amount of attorneys' fees for Lead Counsel, and the parties did not negotiate fees as part of the settlement.  [Stip. § X, at 41-42]  Moreover, the terms of the proposed settlement are not conditioned on the fees (if any) that the Court might decide to award to Lead Counsel, because Plaintiff cannot terminate the Settlement Agreement based on the Court's orders concerning attorneys' fees.  [*Id.* § XIV.B.2, at 45.]  Plaintiff's and Lead Counsel's intentions (if any) about fees thus had no impact on the substantive settlement terms.

      **4.**      **<u>Agreements Between the Parties</u>**

Rule 23(e)(2)(C)(iv) considers any other agreements between the settling parties.  The only agreements between the settling parties here are the Stipulation and the separate agreement concerning Defendants' termination right depending on the number of opt-outs.  [*Id.* § XIV.C, at 46.]  That termination provision is standard in securities class-action settlements.

      **5.**      **<u>Equitable Treatment of Class Members</u>**

Rule 23(e)(2)(D) requires the Court to consider whether the proposal "treats class members equitably relative to each other."  Lead Counsel prepared a plan to allocate the settlement proceeds among eligible claimants based on when they bought Schein common stock, whether and when they sold the stock, and the losses they claim to have sustained.  Defendants did not design the proposed Plan of Allocation, and the Plan is not an integral term of the

17

settlement.  If the Court changes or disapproves the Plan, that ruling does not affect the

substantive settlement terms.  [Stip. § III.E, at 29]  However, Defendants note that the proposed

Plan of Allocation appears to be similar to those routinely used in other securities class actions.

### 6.      Class's Reaction to Settlement

Turning to the first remaining *Grinnell* factor:  "It is well settled that the reaction of the

class to the settlement is perhaps the most significant factor to be weighed in considering its

adequacy."  *In re Payment Card II*, 2019 WL 6875472, at *16 (internal quotations omitted).  "If

only a small number of objections are received, that fact can be viewed as indicative of the

adequacy of the settlement."  *Id.* (internal quotations omitted).  Although the period for filing

objections and exclusion requests has not yet closed, only one objection (relating solely to

Plaintiff's attorneys fees) and only two exclusion requests have been filed as of August 11, 2020.

[Miller Decl., ⁋ 12 (discussing exclusion requests)][4]  This "favorable reception by the class

constitutes 'strong evidence' that [the] proposed settlement is fair."  *In re Citigroup Inc. Sec.

Litig.*, 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013) (quoting *Grinnell*, 495 F.2d at 462).

### 7.      Stage of Proceedings and Amount of Discovery Completed

This *Grinnell* factor "is intended to assure the Court that counsel for plaintiffs have

weighed their position based on a full consideration of the possibilities facing them. . . .  Formal

discovery is not a prerequisite; the question is whether the parties had adequate information

about their claims."  *In re Global Crossing*, 225 F.R.D. at 458 (internal quotations omitted).

Plaintiff and Lead Counsel here had sufficient information to conclude that the proposed

settlement is fair, reasonable, and adequate.  Plaintiff explained in its memorandum in support of

preliminary approval that, before participating in the mediation that led to the settlement, Lead

---

[4]      One person who submitted an exclusion request – Ms. Wendy S. Henry – might not be a
Class Member at all.  She says that she "do[es] not own any shares of this stock."

Counsel had reviewed numerous publicly available documents in related litigations, "conducted an extensive investigation" into the claims, and "worked extensively with an expert in damages and market efficiency."  [Dkt. No. 71 at 9]  The parties exchanged mediation statements and then participated in a two-day mediation, during which they discussed many issues with the mediators.  And after signing the Stipulation, Lead Counsel engaged in 90 days of Due-Diligence Discovery.  As Plaintiff's submission shows, Lead Counsel reviewed and analyzed more than 200,000 documents produced by Defendants and interviewed two senior Schein officials.

Plaintiff and its counsel thus were able to explore the facts and circumstances underlying their claims and to assess the potential risks and rewards of litigating versus settling. Accordingly, the adequacy of the discovery conducted to date favors approval of the settlement. *See, e.g.*, *In re Global Crossing*, 225 F.R.D. at 458-59 (approving settlement and finding that plaintiffs' attorneys "had the requisite information to make informed decisions about the relative benefits of litigating or settling" where they had received documents during settlement discussions and then had obtained many more documents after signing settlement agreement).

## 8.    Defendant's Ability to Withstand a Greater Judgment

This *Grinnell* factor considers whether the defendant could withstand a judgment greater than the settlement amount.  But while "[t]he ability of the defendant to pay a judgment greater than the amount offered in a settlement can be relevant to the Court's determination of the Settlement's fairness . . . , the converse is not necessarily true; i.e., the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also, e.g.*, *D'Amato*, 236 F.3d at 86 (affirming approval of settlement because other *Grinnell* factors weighed in favor of approval despite

19

District Court's finding that defendants could withstand higher judgment); *In re Payment Card II*, 2019 WL 6875472, at *27 (approving settlement despite defendant's ability to pay more).

### 9. Range of Reasonableness of Settlement Fund

The last two *Grinnell* factors "'compare the terms of the compromise with the likely rewards of litigation.'" *In re Citigroup*, 965 F. Supp. 2d at 384 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1983)). The question for the Court "is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces." *In re Payment Card II*, 2019 WL 6875472, at *29 (internal quotations omitted). "'[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *Id*. at *29 (quoting *Grinnell*, 495 F.2d at 455). "There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* (internal quotations omitted).

For the reasons discussed here and in Defendants' brief in support of preliminary approval, Defendants believe that this settlement represents a fair and good value for a weak case. If the case were to continue, Plaintiff would face substantial hurdles in proving crucial and hotly disputed issues including material misrepresentations and omissions, corporate scienter, and loss causation. Such challenges were further compounded by the FTC ALJ's ruling that Schein had not engaged in any anticompetitive conduct, *see In the Matter of Benco Dental Supply Co.*, No. 9379 (Oct. 15, 2019) [Dkt. No. 59-1], and by the Second Circuit's decision on corporate scienter in the *Jackson* case. Defendants therefore believe that Plaintiff would not be able to prove the allegations underlying its claims.

20

Plaintiff has told the Court that the proposed settlement of $35,000,000 represents a recovery of 13% of the maximum amount of damages that realistically could be established at trial.  [Dkt. No. 71 at 13]  Particularly in light of the deficiencies in Plaintiff's claims, such an amount represents a very favorable recovery.  Courts throughout the country have routinely approved settlements providing far smaller percentages of recovery.  *See, e.g.*, *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (reporting that median recovery in securities class-action settlements between 2013 and 2015 was 2.2% of claimed damages); *In re ViroPharma Inc. Sec. Litig.*, 2016 WL 312108, at *14 (E.D. Pa. Jan. 25, 2016) (approving settlement of 9% to 10% of maximum estimated loss, and noting that, between 1996 and 2014, median settlement amount was 4.8% of projected investor losses ranging between $50 million and $99 million); *In re Citigroup*, 965 F. Supp. 2d at 384 (noting mean recovery of 2.2% and median recovery of 1.1% in securities cases, and approving settlement for 9.4% of potential damages).[5]

---

[5]      *See also, e.g.*, *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses"); *In re Amer. Bus. Fin. Servs. Inc. Noteholders Litig.*, 2008 WL 4974782, at *3, *9, *13 (E.D. Pa. Nov. 21, 2008) (approving settlement for 2.5% of damages); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) ("the more typical recovery rate in class actions is between 5% and 6%"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (recovery of approximately 6.25% of estimated damages is "at the higher end of the range of reasonableness of recovery in class actions securities litigation"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 714-15 (E.D. Pa. 2001) (noting that securities class actions that settled between 1995 and 1999 recovered between 5.5% and 6.2% of estimated losses); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approving settlement for 5.2% to 8.7% of claimed damages); *In re PaineWebber*, 171 F.R.D. at 131 (approving settlement for 4% to 12.5% of damages).

## CONCLUSION

The Court therefore should grant final approval of the proposed settlement.


Dated:  August 12, 2020

/s/ Ralph C. Ferrara
Ralph C. Ferrara (*pro hac vice*)
Ann M. Ashton (*pro hac vice*)
Proskauer Rose LLP
1001 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, D.C.  20004
T:  (202) 416-6800
F:  (202) 416-6899
rferrara@proskauer.com
aashton@proskauer.com

Respectfully submitted,

/s/ Jonathan E. Richman
Jonathan E. Richman
Peter D. Doyle
Proskauer Rose LLP
11 Times Square
New York, New York  10036
T:  (212) 969-3000
F:  (212) 969-2900
jerichman@proskauer.com
pdoyle@proskauer.com

*Attorneys for Defendants*

118482623v3